CARISCH, Appellant, vs. FARMERS & MERCHANTS STATE
BANK, imp., Respondent.

*December 6, 1926—January 11, 1927.*

*Jury: Action triable by court or by jury: Prayer of complaint not
conclusive: Action to cancel prior assignment of mortgage:
Whether assignment is collateral to future indebtedness of as-
signor: Evidence: Sufficiency.*

1. An action to recover possession of a note and mortgage as-
   signed to plaintiff by one W. and held by a bank under a prior
   assignment as collateral for the indebtedness of W. is triable
   by the court and not by a jury, as it is necessary to expunge
   the prior assignment from the record to vest plaintiff with an
   unclouded title and sufficient facts appearing in the complaint
   to entitle plaintiff to the relief asked for in the prayer. p. 554.
2. Generally, whether a case is for the court or for a jury is not to
   be judged by the prayer of the complaint. p. 554.
3. The evidence in this case is *held* sufficient to show an agreement
   that the mortgage was to be held as collateral security for any
   future indebtedness of W. to the bank, thereby entitling the
   bank to hold the note and mortgage against the plaintiff, where
   such indebtedness had not been paid. p. 556.

APPEAL from a judgment of the circuit court for Pierce
county: R. S. COWIE, Judge. *Affirmed.*

This action was brought to recover possession of a note
and mortgage assigned to the plaintiff by one Thomas H.
Wilcox as collateral security for the payment of notes ex-
ecuted by said Wilcox to said plaintiff, totaling the sum of
$2,912.40. The complaint alleges that the defendant is a
banking corporation; that on the 14th day of November,
1919, said Wilcox assigned and delivered to said bank, as
collateral security for a note executed by him to the bank, a
certain note secured by real-estate mortgage in the sum of
$12,000, and that on the 5th day of December, 1924, the
said bank caused the assignment of said real-estate mortgage
to be recorded in the office of the register of deeds in and for

St. Croix county, Wisconsin, in which county the real estate was located, and in which office the mortgage had been recorded; that on the 18th day of April, 1925, said Wilcox being indebted to the plaintiff in the sum of $2,912.43, to evidence which indebtedness the plaintiff held his promissory notes, delivered to plaintiff, as collateral security for said notes, an assignment of said note and mortgage which he had on the 14th day of November, 1919, duly assigned to the defendant bank as security for his indebtedness to said bank, and that the plaintiff, on the 18th day of April, 1925, caused said assignment to be recorded in the office of the register of deeds in and for St. Croix county, Wisconsin; that on the 20th day of April, 1925, the said Wilcox paid his indebtedness to the bank for which said note and mortgage had been assigned to the bank to secure, and that by reason of such payment, and the assignment of said note and mortgage from Wilcox to plaintiff under date of April 18, 1925, plaintiff became entitled to the possession of said note and mortgage; that on the 7th day of May, 1925, the plaintiff duly demanded of the defendant possession of said note and mortgage, which was refused; that the indebtedness from Wilcox to plaintiff had not been paid, and that plaintiff is the lawful owner and holder of said note and mortgage.

The prayer of the complaint is:

"Wherefore, this plaintiff demands judgment against the defendant for the recovery of the said $12,000 note so executed by the said Anton Nelson and Anna Nelson, his wife, and the mortgage given to secure the same, or for the value thereof in case a delivery cannot be had; and a further judgment expunging the assignment of said mortgage to the defendant from the records in the office of the register of deeds aforesaid; and for his costs and disbursements herein."

The answer alleges that the note and mortgage was assigned by Wilcox to the bank not only for the purpose of securing the indebtedness which Wilcox then owed the bank,

but for the purpose of securing such further loans and advances as might be made to said Wilcox by the bank; "and that ever since said date said defendant has held said note and mortgage and from time to time as requested by said Thomas H. Wilcox extended credit to said Thomas H. Wilcox on the faith and credit of said collateral, and that said Thomas H. Wilcox was at the time of the commencement of this action and for a long time prior thereto had been indebted to said defendant in the sum of $8,161.50," and that said note and mortgage was held by said bank as collateral to that indebtedness.

The case was tried before the court. Findings of fact were made and filed to the effect that said Wilcox, on the 14th day of November, 1919, assigned said note and mortgage to said bank as collateral security for his indebtedness to said bank, then amounting to $4,000; that thereafter, and on the 7th day of June, 1920, the bank loaned to said Wilcox, on a note signed by himself and one L. N. Chapman, his son-in-law, the sum of $624; that it was then and there agreed that the note and mortgage theretofore assigned to the bank should stand as collateral security for the payment of said $624 note and for the payment of any future indebtedness to the bank; that on the 13th day of December, 1920, the bank loaned to Wilcox the further sum of $3,000, with the agreement that said note and mortgage then in the possession of said bank should be held as security for the payment of said indebtedness; that subsequently $5,000 more was similarly loaned upon the note of said Wilcox and Chapman, and it was agreed that said note and mortgage should stand as, and be collateral security for, the payment of said indebtedness; that said Chapman was the son-in-law of Wilcox, of no financial standing, and that said loan was made solely upon the credit of said Wilcox and in reliance upon said note and mortgage as security for such loans; that on the 2d day of December, 1925, the total amount of the indebtedness thus

incurred by Wilcox to the bank was $8,628.06; that on the 18th day of April, 1925, said Wilcox assigned said note and mortgage, as alleged in the complaint; that at the time of said assignment plaintiff knew that said note and mortgage was in the possession of the defendant bank; that on the 7th day of May, 1925, plaintiff demanded possession of said note and mortgage of said bank, and the bank refused to deliver possession thereof; that on the 21st day of April, 1925, said Wilcox paid to said bank the sum of $3,255.10, being the amount still due on his original indebtedness of $4,000, and that at the time of said payment Wilcox did not request the return of said note and mortgage; and as conclusion of law judgment was ordered in favor of the defendant. From such judgment the plaintiff brings this appeal.

For the appellant there was a brief by *Knowles & Doolittle* of River Falls, and oral argument by *L. S. Doolittle*.

For the respondent there was a brief by *White & White* of River Falls, and oral argument by *Ferris M. White*.

OWEN, J. It appears that this case was noticed for trial as a jury case and placed upon the calendar under issues of fact for the jury. Upon the opening of court the defendant moved that it be transferred from the jury to the court calendar. The court held that the pleadings presented a court issue and accordingly transferred the case to the court calendar. Appellant contends that the pleadings presented a jury issue, and that the action of the court in transferring the case to the court calendar denied plaintiff the right to a trial by jury. Appellant contends that the action is a straight action at law in replevin, and that no court issues are presented. It will be noticed that the prayer for relief asks for "a further judgment expunging the assignment of said mortgage to the defendant from the records in the office of the register of deeds aforesaid; and for his costs and disbursements herein."

Appellant contends that the nature of the case is not to be judged by the prayer of the complaint, and, as a general proposition, this may be conceded. However, the quoted portion of the prayer clearly calls for equitable relief, and a reference to the complaint reveals facts which entitle the plaintiff to the relief asked for.

It appears from the allegations of the complaint that the plaintiff is the owner and holder of the note and mortgage; that the records of the office of the register of deeds of St. Croix county disclose an assignment of said mortgage from Wilcox to the bank, which said assignment was prior to the assignment from Wilcox to the plaintiff. In order to vest the plaintiff with an unclouded title to the mortgage it is necessary to have that assignment expunged from the record. Until that is done by a court of competent jurisdiction the title of the plaintiff will be under a cloud, and it was appropriate and orderly procedure to obtain that relief in the very action brought to secure possession of the mortgage. This relief being equitable in its nature, and relief to which the plaintiff is entitled upon the allegations of the complaint, stamps the action as an equitable action, an action properly triable by the court, and no error was committed in transferring it to the court calendar.

The only other question in the case is whether the findings are supported by the evidence. The assignment of the mortgage was in writing. It was a straight assignment, and did not reveal the fact that it was assigned as and for collateral security, and purported to vest the bank with full title. It is undisputed, however, that notwithstanding this form of the written assignment the mortgage was assigned as collateral security. Wilcox admits that it was assigned as collateral security for his original indebtedness of $4,000, but claims that there never was any agreement or understanding between him and the bank that said mortgage should be held as col-

lateral security for any future indebtedness. It appears that the only indebtedness arising from Wilcox to the bank after the assignment of said note and mortgage arose by reason of Wilcox becoming surety for his son-in-law upon the various notes set forth in the findings of fact. It is apparent that in order to enable the bank to retain or to hold this mortgage as collateral security for that indebtedness it is necessary for it to prove that either at the time of the original assignment it was agreed between the bank and Wilcox that the mortgage should be held by the bank as collateral for future indebtedness or that there was such an agreement at some later time. Wilcox emphatically denies that there ever was such an agreement. The only testimony on the part of the bank to establish that there was such an agreement is that of Wiger, the cashier. Wiger's testimony to establish such an agreement is most unsatisfactory. He does not tell when such an agreement was made, he does not pretend to give the language in which it was couched, but, inferentially, maintains through his examination that such an agreement was made. He says it was talked and mentioned several times during different renewals. He says that there was some conversation along that line at the time the first loan was made to Chapman. Asked to state what that conversation was, he answered: "Supposed to be collateral for that indebtedness as well as Mr. Wilcox." However, there are certain circumstances that tend to indicate that there was such an understanding between the parties, and give rise to the impression that the indefinite and unsatisfactory nature of Wiger's testimony was due to an ineptitude of expression. Wiger testified to negotiations between him and Wilcox relating to a sale of the mortgage to the bank, using the proceeds to pay up Wilcox's indebtedness to the bank, and it was assumed that the mortgage stood as collateral security for the indebtedness of the son-in-law.

One Jay H. Grimm also testified that Wilcox told him that the mortgage was with the bank as security for all of his indebtedness. That is not regarded as very strong testimony, because it does not appear whether Wilcox regarded the notes upon which he was surety for his son-in-law as his indebtedness. This alleged admission was denied by Wilcox. There is the further admitted circumstance that the bank would not loan money to Wilcox without security. It is admitted that the son-in-law for whom Wilcox became security was financially irresponsible; that the bank would loan the son-in-law money upon Wilcox's indorsement, when it would not loan Wilcox money without security, seems quite improbable. It further appears that when he made the payment to the bank which wiped out his original indebtedness, the bank proposed to apply the payment on the larger note of the son-in-law. Wilcox admits this is true. He says he objected to it, but he does not say in what manner. Wiger testifies that Wilcox simply said "he would rather have the other note taken up, and I told him it did not make any difference to us, so I canceled the other note." There is a further very persuasive circumstance in support of the findings of the trial court, and that is, that upon the payment of this original $4,000 note Wilcox made no demand for the note and mortgage then in possession of the bank.

Our conclusion is that the record contains sufficient evidence to support the findings.

*By the Court.*—Judgment affirmed.